**TRIPPE MANUFACTURING COMPANY, an Illinois corporation, Appellant**

v.

**NILES AUDIO CORPORATION, a Florida corporation.**

No. 03–4101.

United States Court of Appeals, Third Circuit.

Argued Jan. 18, 2005.

March 18, 2005.

Randi W. Kochman, Cole, Schotz, Meisel, Forman & Leonard, Hackensack, NJ, and Nathan H. Lichtenstein (argued), Paul A. Greenberg, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, for Appellant.

Anthony P. Callaghan, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, and Stephen E. Nagin (argued), Catherine A. Van Horn, Nagin, Gallop & Figueredo, Miami, FL, for Appellee.

Before ALITO, McKEE, and SMITH, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge.

Trippe Manufacturing Co. ("Trippe") appeals an order denying its motion for summary judgment and granting a motion by Niles Audio Corporation ("Niles") to compel arbitration. Because a duty to arbitrate must be founded upon a contractual obligation, we reverse the order compelling arbitration with regard to claims asserted by Niles that are unrelated to obligations expressly assumed by Trippe through the Asset Purchase Agreement ("APA") that entered into effect on August 29, 2001. To the extent that Trippe expressly assumed obligations under the APA, however, the order compelling arbitration is affirmed.

## I.

Niles manufactures and markets consumer audio equipment. In early 1998, Niles entered into an Exclusive Distributor Agreement ("EDA") with SL Waber, Inc. ("Waber"). Under the terms of the EDA, Waber was to manufacture surge protectors for Niles. Waber was also obligated to perform lifetime service support for the product, to provide a toll-free customer service phone line, and to handle claims under a connected equipment guarantee ("CEG") covering damage to electronic equipment connected to the surge-protector. In addition, Waber covenanted to give Niles quarterly reports on service and warranty claims. Clause 12(f) of the EDA states, in part:

> All disputes, claims, and controversies arising under this Agreement, or a breach thereof, shall be resolved by arbitration through the American Arbitration Association in accordance with its rules and regulations.

According to Niles, there were several technical problems with the surge-protector and, after selling several thousand units, Niles cancelled all outstanding orders in early 2001.

Trippe, a manufacturer, entered into the APA with Waber, effective August 29, 2001. Under the terms of the agreement, Trippe acquired several assets associated with Waber's surge protector business, including Waber's rights to the Niles Audio Contract. APA 1.1(h); APA Schedule 1.1(h). In clause 1.3 of the APA, Trippe expressly assumed certain of Waber's liabilities, including:

> (d) All liabilities, undertakings and obligations for all product warranty and connected equipment guarantees covering all products sold to customers of the Waber Business, regardless of whether the product was manufactured, assembled or sold

prior to, on or after the date of Closing.

> (f) All liabilities and obligations of [Waber] arising after [August 21, 2001] under each of the Material Contracts listed on *Schedule 1.1* (h) of the Disclosure Schedule.

Under the terms of the agreement, Trippe disclaimed responsibility for any debt, obligation, or liability owed by Waber beyond those expressly assumed.

In late 2002, Niles filed a demand for arbitration naming, among others, Waber and Trippe. With regard to Trippe, Niles requested the following relief: (1) a declaratory judgment binding Trippe to the agreement between Niles and Waber, (2) an order enjoining Trippe from discontinuing customer service support, warranty repairs, fulfilling the CEG, or discontinuing reporting obligations to Niles as required by the EDA, (3) attorneys' fees and costs, and (4) money damages. Trippe filed the present motion seeking both a declaration that the EDA arbitration clause is not binding on Trippe and an order enjoining Niles from pursuing its claims against Trippe in the arbitration proceeding. Niles responded with a motion to compel arbitration. The District Court granted Niles's motion, and this appeal followed.

In granting Niles's motion to compel arbitration, the District Court did not distinguish between claims arising out of Trippe's warranty and CEG obligations and other liabilities arising out of the EDA; nor did the District Court distinguish claims according to whether they arose before or after the effective date of the APA.

## II.

We exercise plenary review over the District Court's decision to compel arbitration. *See Bouriez v. Carnegie Mellon*

*University,* 359 F.3d 292, 294 (3d Cir. 2004). We also exercise plenary review over a denial of summary judgment. *See Bartnicki v. Vopper,* 200 F.3d 109, 114 (3d Cir.1999).

■ This arbitrability dispute is connected with a transaction involving interstate commerce, and is therefore governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("The FAA"). The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate. *See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Although the EDA calls for the application of New Jersey law to the construction of its terms, this case does not directly implicate the enforceability of the EDA arbitration clause, but rather whether Trippe assumed the duty to arbitrate according to that clause by entering into the APA with Waber. Because we are concerned with the duties assumed by Trippe under the APA, the choice of law provision of that agreement, calling for the application of New York law, applies.

### III.

■ A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement. *See PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). When a dispute consists of several claims, the court must determine on an issue-by-issue basis whether a party bears a duty to arbitrate. *See Painewebber Inc. v. Hofmann,* 984 F.2d 1372, 1376–77 (3d Cir.1993). When deter-

mining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability. "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

■ Although Trippe is not a signatory to the EDA, the EDA arbitration clause may nevertheless be enforceable against it. There are five theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel. *Mag Portfolio Consult, Gmbh v. Merlin Biomed Group, LLC,* 268 F.3d 58, 61 (2d Cir.2001). Niles contends that when Trippe expressly assumed certain of Waber's obligations under the EDA, it also assumed the duty to arbitrate disputes related to those obligations. Niles further argues that Trippe is bound by the EDA arbitration clause under theories of incorporation and estoppel. These arguments are addressed in turn.

### A.

■ Under New York law, the assignee of rights under a bilateral contract is not bound to perform the assignor's duties under the contract unless he expressly assumes that obligation. *Sillman v. Twentieth Century–Fox Film Corp.,* 3 N.Y.2d 395, 165 N.Y.S.2d 498, 144 N.E.2d 387, 391 (1957). That said, when an assignee assumes the liabilities of an assignor, it is bound by an arbitration clause in the underlying contract. *Blum's, Inc. v. Ferro Union Corporation,* 36 A.D.2d 584, 318 N.Y.S.2d 414, 415 (1st Dept.1971); *see generally* WEINSTEIN, KORN, & MILLER, 1

N.Y. Civil Practice: CPLR P 7503.08. Trippe argues that the arbitration clause constitutes an obligation that is distinct and severable from the substantive duties imposed by the EDA and that therefore no agreement to arbitrate exists because the clause was not independently expressly assumed. This argument is not convincing because "an assignment cannot alter a contract's bargained-for remedial measures, for then the assignment would change the very nature of the rights assigned." *GMAC Commercial Credit, LLC v. Springs Industries, Inc.*, 171 F.Supp.2d 209, 216 (S.D.N.Y.2001) (citing *Septembertide Publishing v. Stein and Day*, 884 F.2d 675, 682 (2d Cir.1989)). Because the EDA arbitration clause covered all disputes arising under that agreement, Trippe's agreement to arbitrate with Niles is coextensive with the substantive obligations assumed by Trippe under the APA.

This conclusion is entirely consistent with the case on which Trippe principally relies, i.e., *Gruntal & Co., Inc. v. Steinberg*, 854 F.Supp. 324 (D.N.J. 1994). In *Gruntal,* the assignee expressly and without exception disclaimed liability for the assignor's obligations arising before the effective date of the agreement, and all of the plaintiff's claims were related to events prior to that date. *Gruntal*, 854 F.Supp. at 336. Although Trippe argues that claims asserted by Niles in the Demand relate to events and transactions that occurred long before the APA effective date, this is not conclusive of the issue before us; some of Niles's claims relate to events that took place after the effective date, and some of Trippe's assumed obligations reach back prior to that date. First, Trippe expressly assumed liability for "all product warranty and connected equipment guarantees covering all products sold to customers of the Waber Business, regardless of whether the product was manufactured, assembled or sold prior to, on or after the date of Closing." APA 1.3(d). Because the duty to arbitrate attached to these obligations, Trippe is bound to arbitrate Niles's warranty and CEG claims. Second, Trippe expressly assumed liability arising out of the Niles Audio Contract after the effective date and is therefore bound to arbitrate those claims as well. Finally, because Trippe did not assume Waber's obligations arising prior to the effective date of the agreement, with the exception of the warranty and CEG obligations, Trippe did not agree to arbitrate claims related to those unassumed obligations.

Because Trippe agreed to arbitrate disputes related to obligations expressly assumed by the APA, an order compelling arbitration is proper if Niles's claims are within the scope of that agreement to arbitrate. The language of clause 12(f) of the EDA is very broad, encompassing "[a]ll disputes, claims, and controversies arising under this Agreement, or a breach thereof . . . ." All of Niles's claims presented in its demand for arbitration fall within the scope of this clause. The limiting factor with regard to Trippe is not the scope of the arbitration clause, but the existence of the agreement. We therefore hold that the order compelling arbitration is correct with respect to any claim arising out of the EDA after August 21, 2001, and to all claims related to the warranty and CEG obligations.

### B.

■ Niles argues that the entirety of Waber's obligations under the EDA are binding on Trippe, including an unlimited duty to arbitrate. In an effort to achieve this result, Niles invokes the theory of incorporation by reference, citing *Exchange Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274 (6th Cir.1984). The theory of

incorporation by reference is relevant to the interpretation of a contract that expressly adopts the terms and conditions of an earlier agreement. Although Trippe acquired some of Waber's rights under the EDA by entering into the APA, it is not accurate to say that the parties intended for the EDA to inform the APA's construction. Rather, the EDA is treated as a purchased asset by the APA. Niles cannot expand Trippe's duty to arbitrate under this theory.

### C.

Niles argues that because Trippe embraced the EDA, Trippe should be equitably estopped from challenging the arbitration clause, citing *Bouriez*, 359 F.3d 292. As in *Bouriez*, however, there is no evidence that Trippe directly benefitted from the assignment of Waber's rights to the Niles contract and therefore no grounds for invoking the equitable power to bind a non-signatory to the arbitration clause in question.

### IV.

We hold that Trippe must arbitrate claims arising out of the obligations expressly assumed in the APA, specifically, claims related to warranty and CEG obligations and all claims arising after August 21, 2001. To the extent that the District Court's order conforms with this holding, it is affirmed. To the extent that the order compelling arbitration encompassed claims unrelated to warranty and CEG obligations that arose prior to August 21, 2001, it is reversed.